## COALDALE COAL CO. v. STATE BANK ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 22, 1891—Decided May 4, 1891.

(*a*) Holt & Chipman, partners in mining and selling coal and indebted but not insolvent, formed a corporation as the Coaldale Coal Co., to which they transferred all their property, receiving therefor substantially all the corporate stock. The business of the corporation with others was afterward continued in the name of Holt & Chipman.

(*b*) H. & C., in continuing the business in the partnership name, incurred a large indebtedness and became insolvent. After securing certain creditors by assignments of stock, they made an assignment. Creditors, not secured by stock, subsequently obtained judgment, and levied upon the property as the property of the partnership :

1. The transfer by H. & C. of the partnership property to the corporation was not a withdrawal of it fraudulent as to present or future creditors. It remained subject to their indebtedness in a changed form. Their in-interest in the corporation was represented by their stock, which was as much liable to their creditors as was the property itself before the transfer.

2. The preference given by H. & C. to their bona-fide creditors was not unlawful as to those not preferred. Neither class having a special equity over the other, each must stand upon its legal rights ; and the unpreferred creditors were without legal right to levy upon and sell the corporate assets as the property of the partnership.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 215 January Term 1891, Sup. Ct. ; court below, No. 218 November Term 1890, C. P.

On October 1, 1890, upon the sheriff's petition an issue was directed, wherein the Coaldale Coal Company was to be plaintiff, and the National State Bank of Camden, N. J., other banks and a certain coal company, defendants, to determine the title to certain personal property, including leases and leasehold rights for mining coal, levied upon under writs in favor of the defendants in the issue, as the property of D. W. Holt and R. H. Chipman, partners as Holt & Chipman, and claimed to be the property of the plaintiff in the issue, the Coaldale Coal Company. Issue joined.

Charge of Court below.

At the trial, on December 1, 1890, it was made to appear that the judgments of the several execution creditors against Holt & Chipman were obtained in May and June, 1890, upon negotiable notes, bills or acceptances, of which the earliest in date was April 28, 1887.

The case shown by the testimony sufficiently appears from the charge to the jury, FURST, P. J., in part as follows:

The facts which are material to an understanding of the case are as follows:

D. W. Holt and R. H. Chipman were the owners of certain mining leases, coal leases upon coal lands, in the county of Clearfield, prior to 1887. The evidence shows that they were the owners of these leases, and operating coal mines thereunder, as early as 1885. They had been mining coal under these leases, and they used in connection with the mining of coal, we may assume, the personal property which is described in the sheriff's schedule attached to his petition, consisting of mules, mine trucks or cars, tools, and fixtures connected with the mining of coal. D. W. Holt lived in the borough of Philipsburg. R. H. Chipman lived in the city of New York. The manner in which they carried on the mining of coal prior to April 22, 1887, was this: D. W. Holt was superintendent of the mines, managing the mining and shipping of coal at Philipsburg, or at the mines, and Mr. Chipman was in New York, at their office there, engaged in the selling of coal to different parties; and they used their own name, Holt & Chipman, or Chipman & Holt, or both, indiscriminately, in the sale of the coal mined from these mines prior to April 22, 1887, and we may say here, so as not to be misunderstood, the name of the partnership was continued for some time after April 22, 1887.

[On April 22, 1887, or prior thereto, articles of incorporation were framed under the corporation act of April 29, 1874. These articles of incorporation have been read in the hearing of the court and jury, and they set forth that articles of association have been entered into under the corporate name and style of the Coaldale Coal Company. The Coaldale Coal Company became the owner of these leases by transfer from Holt & Chipman, and the owner of the personal property connected therewith. At that period of time, Holt & Chipman were ab-

Charge of Court below.

solute owners of these coal leases and all the personal property.] [4]   These articles of association, after having been signed and acknowledged before the recorder of deeds of Centre county, were forwarded to the state department, and according to the provisions of the act of assembly regulating the incorporation of corporations of the second class, the articles were submitted to the governor of this commonwealth, who examined and approved them and indorsed his approval thereon; and on April 22d he issued letters patent creating this association of individuals into a corporation in law, by the name and style of the Coaldale Coal Company, and the record shows that this charter was enrolled in the office of the secretary of the commonwealth.

[Now, the property of the corporation, as declared in the articles of association, consisted of the transfer of these local leases and this personal property (all of which is set out in the articles of association), which had previously belonged to D. W. Holt and R. H. Chipman.   The value of the capital stock was fixed at $250,000, consisting of twenty-five hundred shares of stock of the par value of $100 a share.   The law requires that ten per cent of the capital stock shall be paid in at the formation of the corporation.   The testimony in this case is uncontradicted that it was paid in; that $25,000 was paid into the treasury of the company.] [5]

The act of 1874, under which this corporation was created, requires that the association shall be composed of at least five persons; that no corporation can be constituted short of five individuals, so as to have a sufficient number of persons for officers and directors of the company.   Therefore, it is apparent that these six other persons were taken into the association to make up the requisite number of members, each of them having one share of stock, which was given to them by Holt & Chipman, who owned the entire capital stock until they made a distribution of these six shares to these six different persons. Each of the original persons, Holt & Chipman, transferred from their respective shares of the stock three shares of stock; so that at the formation of the company D. W. Holt owned twelve hundred and forty-seven shares and R. H. Chipman twelve hundred and forty-seven, which, with the six shares given to these six persons, make in all twenty-five hundred shares.   On May 7th following, a formal deed was made by Holt & Chip-

Charge of Court below.

man conveying this property to the corporation. This deed was acknowledged by D. W. Holt on the seventh day of May, and, if my recollection is right, a few days later by R. H. Chipman in the city of New York. This deed to the corporation was recorded. On April 22d, R. H. Chipman was made president; D. W. Holt vice-president, and some of the other parties owning a single share of stock, secretary, treasurer, and directors. Holt & Chipman continued to operate the mines and ship coal after the formation of this corporation until the third day of September, 1887.

On April 23, 1887, according to the evidence in this case, Holt & Chipman owed bills payable in excess of bills receivable about $150,000. From the evidence, it is made manifest and clear that Holt & Chipman held a large amount of the paper of Robert Hare Powel & Co. and of C. E. Pennock & Co. In the latter part of August, 1887, Pennock & Co. failed, and on the 29th of August, Robert Hare Powel & Co. failed; and, according to the evidence in this case, the failure of these two firms caused the failure of Holt & Chipman, which occurred on September 3, 1887. On September 3, 1887, Holt & Chipman made a general deed of assignment for the benefit of creditors, in which they appointed Col. John I. Rogers, of the city of Philadelphia, the assignee, who immediately entered upon the duties of his trust, qualified, gave bonds, and took possession of the assigned estate.

Now, up to the failure of Powel & Co. and Pennock & Co. the credit and financial standing of Holt & Chipman, according to the evidence, was good in the business community; their paper was discounted, as the evidence shows, without question.

On May 19, 1887, (going back in order to get the history of the case fully,) the Coaldale Coal Company issued stock to D. W. Holt and R. H. Chipman, one certificate to each, for twelve hundred and forty-seven shares. These certificates seem to have been returned to the company on June 14, 1887, and a re-issue was made in certificates of smaller amounts. Perhaps Mr. Chipman's certificate was not returned at that time, but it is not material. Holt's was. D. W. Holt, according to the evidence in the case, which is not questioned, was indebted to various parties individually. He had his certificate of twelve hundred and forty-seven shares divided into smaller certificates,

Charge of Court below.

and he transferred to Loraine two hundred shares; J. M. Holt seventy-seven shares; J. M. Holt & Co. one hundred and fifteen shares; I. V. Gray seventy-four shares; A. J. Graham, forty-eight shares; Mrs. Allport one hundred and thirty shares; and Mrs. Catherine Holt, his wife, three hundred and fifty-eight shares, making ten hundred and two shares. These parties were the creditors of D. W. Holt, and this indebtedness of D. W. Holt has not been questioned in this case; so we must regard them and do regard them as bona-fide creditors of D. W. Holt. Just the exact date when the transfers were made to these individual creditors of D. W. Holt we are not positive, but will assume they were made on September 2, 1887, the day before the assignment for the benefit of creditors of Holt & Chipman. On that same day, the balance of stock owned by Holt & Chipman was transferred as follows to the creditors of Holt & Chipman, creditors whose debts are not disputed in this case: Of the remaining stock, the Philipsburg Banking Company received one hundred and six shares; Reynolds & Co. of this town fifty-four shares; the First National Bank of Bellefonte one hundred shares; the Merchants' Exchange National Bank of New York two hundred and twenty shares; the American Exchange National Bank of New York two hundred and sixty-eight shares; the First National Bank of Jersey City three hundred and sixty-six shares; the Seventh National Bank of Philadelphia fifty-seven shares; making, with what D. W. Holt had paid to his individual creditors, twenty-one hundred and seventy-three shares. That left three hundred and twenty-one shares of stock, which ultimately passed to the assignee of Holt & Chipman, and these shares are assets in the hands of the assignee of Holt & Chipman for the benefit of creditors.

Immediately after the assignment to Mr. Rogers, an inventory of the assigned estate was made, and in this inventory appears fourteen hundred and ninety-two shares of the capital stock of the Coaldale Coal Company, as belonging to the assignee. Some time since filing his account in court, he claimed credit for a greater portion of that stock as not belonging to the assigned estate; a portion, however, he claimed as having passed by the assignment to him as assignee. Exceptions are filed to his account, and these are now pending in court; but with that controversy we have nothing to do in this issue. All

of that will be properly determined when the exceptions to his account come before the court after consideration by the auditor. As we have already said, the issue framed by the court is to determine the title to the property transferred to the corporation. There is no issue to determine whether or not the transfer of the stock made by Holt & Chipman on September 2, 1887, was bona fide. There is no issue here between the proper parties to determine that question. That question could only be determined upon an issue with the holders of the stock and a proper party as plaintiff. The fact, however, is shown in this case, and, if it has any weight, either by itself or in connection with all the other facts and circumstances in the case, if it has any effect upon the transfer, or the creation of the corporation on April 22, 1887, then it would be a fact to be considered by the court and jury. So that you may understand clearly the view taken of this case, and so that the record may show the disposition of the case, the court will refer particularly to the transfer of that stock, so that it shall have its due weight.

It is not denied that on September 2d Mr. Holt owned the stock referred to, or that Mr. Chipman owned the stock referred to. They were then the absolute owners of that stock just as much as you are severally the owners of the property you possess. . . . .

—After quoting from Covanhovan v. Hart, 21 Pa. 500, and from Lake Shore Banking Co. v. Fuller, the court proceeded:

Therefore, we say to you that the fact that on September 2, 1887, Holt & Chipman transferred to bona-fide creditors stock in this company, either in payment or as security for the payment of indebtedness due them, was an act, or constituted an act, not forbidden by the law, there being no evidence to show that it was done with a bad motive or with bad faith, or received by creditors in bad faith. They had a right to receive it in payment of a debt that was due, or they had a right to receive it as security for the payment of a debt due them. If there had been creditors of Holt & Chipman, and a sale of this stock to original purchasers who knew that the object of Holt & Chipman was to transfer the stock to prevent it from coming into the hands of their creditors, then it would be fraudulent and void. Now, an act when considered by itself not

Charge of Court below.

being wrong, what effect or what bearing has it upon the question, when taken in connection with all the facts and circumstances of the case, upon the creation of the corporation on the twenty-second of April, four months before? Because, the question here is, not to determine the title of the creditors to that stock, but to determine whether or not the Coaldale · Coal Company was the owner of the property levied upon by the sheriff. . . . . .

[Now, the other additional fact upon which we have not yet adverted is the following: That after April 22, 1887, up until September 2, 1887, Holt & Chipman mined and shipped coal and continued to use the same name that they had done from 1885 until the assignment. They used the same name that they had used since 1885, and this is relied upon in the case as showing evidence of fraud. If it by itself indicates fraud in the case, or, in connection with the other facts, would tend to establish fraud, then we would be bound to submit the case to you. Not the simple fact that Holt & Chipman were in possession of the property, because, as the corporators, they would have the right to be in possession; the same parties would be in possession as corporators under the charter. It is the manner of the business, the manner in which the business was conducted. When you take the evidence bearing upon that question, you will find that from 1885 to September 2, 1887, the same name was used in the mining and shipping of coal. Was it therefore a harmful and fraudulent circumstance that they continued, according to the testimony of Mr. Holt, to use the firm name in the shipment of coal afterwards? We have given that question most serious consideration. We have weighed it, as far as we were able, in all its relations to the other facts in the case. After having given this question such consideration, we are compelled to say to you, either as an individual fact, or as a fact in connection with any other fact in the case, in the mind of the court, it is not evidence of fraud. It is evidence, rather, that they desired to continue the name which may have given some reputation to their coal that they were mining from the Coaldale Coal Company's property during this time; and, if any profits had arisen, when they came to apportion them, they would have been bound to apportion such profits according to the stock held by each, including the other persons holding one share.] [6]

Charge of Court below.

We are required to say further to you, as the plaintiff has withdrawn the points submitted, that the legal existence of the Coaldale Coal Company corporation is not a question in dispute in this case. Under the pleadings in this case, the Coaldale Coal Company is recognized as an existing corporation. The issue is framed upon the petition of the sheriff at the instance of the creditors, in which that corporation is recognized as a corporation existing in law, and under the rules which obtain in this court. If a question was desired to be raised touching the legal existence of that corporation, such a fact should have been incorporated in the issue, so that it could have been determined. But that is waived and the legal character of the plaintiff is admitted. Our rule of court, No. 117, provides that where a party intends to deny the representative capacity or representative character of a party, it must be done by a special plea. No such plea having been filed, we are bound to regard the Coaldale Coal Company in this issue as an existing corporation.

[The view we have taken of the case, therefore, requires the court to say that, under all the evidence in the case, and this evidence is uncontradicted, there is not sufficient evidence of fraud for the court to submit the question to you, and we are therefore compelled, under our view of the case, to direct a verdict for the plaintiff.] [7] If, in so doing, we have committed error, we have endeavored to place it so clearly upon the record that there will be no difficulty in reviewing the case in a higher court.

The defendants have submitted points which they now desire to have specially read to the jury with our answer. The first point is as follows :

1. That if the jury find from the evidence in the case that D. W. Holt and R. H. Chipman were engaged in the business of mining and shipping coal from what was known as the Coaldale collieries in Clearfield and Centre counties for some time prior to April 25, 1887, under the partnership names of Holt & Chipman at the mines, and Chipman & Holt at the New York offices; that on April 25, 1887, Chipman & Holt, with T. W. Thompson, A. J. Graham, H. McDowell Loraine, Walter Sanderson, Richard B. Chipman, and D. H. Hastings, associated themselves together for the purpose of an incorporation under the laws of Pennsylvania, to be known as the Coaldale Coal

Charge of Court below.

Company, with an authorized capital of $250,000, divided into twenty-five hundred shares of the par value of $100, of which capital stock R. H. Chipman held twelve hundred and forty-seven shares, D. W. Holt twelve hundred and forty-seven shares, Walter Sanderson, Thomas W. Thompson, and H. McDowell Loraine, employees of Holt & Chipman, each one share, Richard B. Chipman, son of R. H. Chipman, one share, D. H. Hastings, Esq., attorney for Chipman & Holt, one share, and A. J. Graham, a business associate of Chipman & Holt, one share; that, of the capital stock of $250,000 of the Coaldale Coal Company, $225,000 was to be paid to R. H. Chipman and D. W. Holt, on their transferring all the property of Holt & Chipman and Chipman & Holt in and about the Coaldale collieries to said Coaldale Coal Company, the remaining $25,000 to be paid in cash; that on April 22, 1887, the charter of incorporation was issu d to said incorporators, and on May 12, 1887, the said D. W. Holt and R. H. Chipman, Holt & Chipman, by an assignment in writing, undertook to transfer all the property and effects, leases, etc., of Holt & Chipman and Chipman & Holt to the Coaldale Coal Company for the consideration aforesaid; that after said alleged transfer the said Holt & Chipman and Chipman & Holt continued the mining and shipping of coal from the Coaldale collieries in their own name, as they had done prior to the date of said incorporation; that, at the time of the application for said charter and granting the same, the firms of Holt & Chipman and Chipman & Holt were largely indebted and practically insolvent, and continued to be so indebted up until September 3, 1887, at which time they made a voluntary assignment to John I. Rogers, Esq., of the city of Philadelphia, in trust for the benefit of their creditors; that no transfer or delivery of said property of Holt & Chipman and Chipman & Holt was made other than that indicated by the written assignment, and the personal property levied upon and now in controversy was in possession of Holt & Chipman and Chipman & Holt at the date of said incorporation, and continued to be used by them as though said corporation had not been formed, up until the date of said assignment, without any delivery of possession to the Coaldale Coal Company or visible change in the management thereof; such alleged transfer of the property of Chipman & Holt and Holt & Chipman to the Coaldale Coal Company, com-

posed practically of R. H. Chipman and D. W. Holt, and without any consideration passing therefor, other than the issuing to D. W. Holt and R. H. Chipman (one half to each) of twenty-four hundred and ninety-four shares of the capital stock of said Coaldale Coal Company, was a fraud in law and vested no title in the Coaldale Coal Company as against the defendants in this execution and other creditors of Holt & Chipman and Chipman & Holt.

Answer: We refuse this point, first, because under our view of the case it is inapplicable, and, secondly, it is incorrect in some material facts. Holt & Chipman were not to be paid $250,000 in money. They transferred to the corporation the assets, which were valued at $250,000, and they received stock in payment of what they transferred to the corporation, and $25,000 was the bonus or ten per cent of the capital stock which the law required to be paid into the treasury and not to Holt & Chipman. And, third, the stock was not issued without consideration. The consideration was the transfer of these leases and property to the corporation; so this point assumes facts which are contradicted by the evidence in the case.[8]

2. If the jury find from the evidence in the cause that the alleged transfer of this property from Chipman & Holt or Holt & Chipman to the Coaldale Coal Company, in which company Chipman & Holt were the owners of $\frac{2494}{2500}$ of the entire capital stock, was without any other consideration than their interest in said company, then the said transfer of said property was a fraud in law as against the creditors of Chipman and Holt.

Answer: We refuse this point, because it is inapplicable, and of itself would not be sufficient evidence of fraud. And, further, in answer to the first and second points: The evidence in the case does not show that the parties were insolvent on April 22, 1887; and, so far as the creditors who are defendants in this case are concerned, they were not in existence until after the transfer was made, and no indebtedness existed between Holt & Chipman and these defendant execution creditors until April 28, 1887. The transfer was in effect made, so far as Holt & Chipman were concerned, by the articles of association which preceded the deed of May 7, 1887. For these reasons both of these points are refused.[9]

3. If the jury find from the evidence that at the time of the

Charge of Court below.

alleged transfer of this property to the Coaldale Coal Company, Chipman & Holt or Holt & Chipman were largely in debt, to an extent greater than the value of this property alleged to be so transferred to said company, and that Chipman & Holt were officers and the chief stockholders in said company, and knew of said indebtedness, then said transfer was fraudulent and void as to the creditors of Chipman & Holt, and the plaintiff cannot recover.

Answer: This point is refused, for the same reasons already given in answer to the first and second points and in our general instructions.[10]

4. If the jury believe that Chipman & Holt were largely indebted at the time this alleged transfer was made to the Coaldale Coal Company, of which they were officers and the principal stockholders, and that they made the transfer for the purpose of hindering, delaying, or defrauding said creditors, then the said transfer is void as to said creditors and the plaintiff cannot recover.

Answer: This point, under the view we have taken of the evidence adduced in this case, must be refused, whilst in certain cases it might be a proper statement of the law; but it is inapplicable to the present case and is therefore refused.[11]

5. That if the jury believe that, from the time of the alleged transfer of May 12, 1887, of this property by Chipman & Holt to the Coaldale Coal Company, no change of possession thereof took place until after September 3, 1887, when the assignment was made for the benefit of creditors, then the title to said property passed under said assignment, and any subsequent possession of said property acquired by the Coaldale Coal Company would be void as against the creditors of Chipman & Holt, and the verdict should be for the defendants.

Answer: This point, under our general charge, is refused.[12]

6. If the jury find from the evidence that the business of Holt & Chipman in the operating of the Coaldale collieries during the time they had been engaged therein and prior to the date of the incorporation of the Coaldale Coal Company, proved unprofitable, and that, at the date of the incorporation of the Coaldale Coal Company they were largely indebted to divers parties, and that, at the date of the alleged transfer by Holt & Chipman to the Coaldale Coal Company, of the property in

controversy (being all the property of Holt and Chipman pertaining to the Coaldale collieries), they contemplated the continuing of the business of Holt & Chipman, and expected to and did incur future indebtedness in connection therewith, and did, after the incorporation of the Coaldale Coal Company and the alleged transfer from Holt & Chipman to the same, incur indebtedness to the Empire Coal Company and other parties, in and about the continuation of the business of Chipman & Holt, which indebtedness remains unpaid, then such transfer to the Coaldale Coal Company, as against the creditors of Chipman & Holt, or their assignee in trust for the benefit of creditors. was fraudulent and void, vested no title in the Coaldale Coal Company to the same, and the verdict should be for the defendants.

Answer: This point assumes facts that are not proven in the case, and, under our view of the law, we say it is inapplicable, and it is refused.[13]

7. If the jury find, from the evidence, that the individuals composing the partnership of Holt & Chipman were subscribers to $\frac{2424}{2500}$ of the capital stock of the Coaldale Coal Company at the time of its incorporation, and that the remaining $\frac{76}{2500}$ were issued, without consideration, to employees and associates of Holt & Chipman, and that, at the time of the incorporation of the Coaldale Coal Company, Holt & Chipman were largely indebted and contemplated incurring future indebtedness in and about the mining and shipping of coal from the Coaldale collieries, the transfer of this property by said Holt & Chipman to the Coaldale Coal Company, in consideration of any part of the capital stock being issued to them for the same, would pass no title as against the creditors of Holt & Chipman, and the verdict should be for the defendants.

Answer: This point, under the view we have taken of the facts of the case, is refused. They sold, in fact, no property. They simply changed the manner of the holding of the personal property that passed on April 22, 1887, by making a stock corporation of it, and holding in corporate stock what they had before, either as partners or individuals. The character in which the leases were made to Holt & Chipman is not shown to the court, and we are therefore unable to say whether they held them as individuals or as partners, after the assignment of these leases to them.[14]

Opinion of the Court.

We will therefore direct a verdict for the plaintiff, for the reasons given in our general instructions and answers to defendant's points.

—The jury returned a verdict for the plaintiff as directed. Judgment having been entered, the defendants took this appeal assigning for error, inter alia:

4–7. The portions of the charge embraced in [  ] [4 to 7]
8–14. The answers to the defendants' points.[8 to 14]

*Mr. A. A. Stephens* and *Mr. John G. Love* (with them *Mr. J. W. Gephart* and *Mr. John M. Dale*), for the appellants. ·

Counsel cited: Montgomery Web Co. v. Dienelt, 133 Pa. 585; Bidwell v. Railway Co., 114 Pa. 535.

*Mr. John H. Orvis* (with him *Mr. C. M. Bower* and *Mr. Ellis L. Orvis*), for the appellee.

Counsel cited: Doner v. Stauffer, 1 P. & W. 198; Baker's App., 21 Pa. 76; Backus v. Murphy, 39 Pa. 397; Crawford v. Davis, 99 Pa. 576; McKnight v. Bell, 135 Pa. 358; Lake Shore Banking Co. v. Fuller, 110 Pa. 157.  ·

PER CURIAM:

A careful examination of this record, and of the fourteen assignments of error, fails to disclose any sufficient reason for reversing the judgment. There was nothing illegal or improper in the formation of the plaintiff company, nor in the transfer to it by Holt & Chipman of the property in question. At the time the company was formed, that firm appears to have been solvent, and there is nothing to show that it was intended as a fraud upon their present or future creditors. It was not a withdrawal of their property from the grasp of creditors. On the contrary, it remained subject to their claims, though in a changed form. The interest of the partners in the corporation was represented by stock. This stock was as much liable to the demands of creditors as was the property itself before the formation of the company. The fact that the greater portion of this stock was subsequently pledged by Holt & Chipman to certain of their creditors, does not alter the case. It was not shown that the debts for which it was pledged were not bona fide, and the firm had a right to prefer creditors in this manner.

This is an attempt to sweep away the assets of the com-pany for the benefit of the unsecured creditors. With this accomplished, the stock in the hands of the pledgees would become worthless; so that the case comes down to a contest between two classes of creditors, neither of which has any especial equity over the other. Both must stand upon their legal rights, and the appellants have not shown any right to levy upon and sell the property of the coal company in satis-faction of their executions against Holt & Chipman.

These general remarks are all that we consider essential to a disposition of the case. To discuss it in detail would consume a large amount of time, and lead to no profitable result.

Judgment affirmed.