(These cases, because of the pendency of petitions for re-hearing, did not reach me in time to be published in their chronological order.—Reporter.)

J. G. SHUMAKER, Appellant, v. W. N. DAVIDSON *et al.,* Defendants and Appellees. DAVID BRADLEY & CO., FIDELITY SECURITIES CO., H. E. TEACHOUT AND P. A. SAWYER, Trustee in Bankruptcy, Defendants, Interveners, Cross-petitioners and Appellants, and H. E. TEACHOUT, Plaintiff, v. D. H. SKINNER *et al.,* Defendants and Appellants.

**Fraudulent Conveyances:** CORPORATION STOCK AS CONSIDERATION. Where a debtor organizes a corporation, and transfers his property to it, with intent to defraud or without other consideration than the stock of such corporation, the transaction is fraudulent as to creditors.

EVIDENCE. Where a debtor organizes a corporation to take title to land, the fact that others invested money therein, and transferred property in consideration of stock received, is sufficient in the absence of proof to the contrary, to show that the scheme was not one to defraud creditors.

*Same.* Where, in an action to set aside a conveyance as in fraud of creditors, the facts disclosed by the evidence are as consistent with honesty as fraud, the transaction will be sustained.

*Same.* The mere fact that assignments of stock in a corporation organized by a debtor to take title to land were made to such debtor's relatives, is not alone sufficient to show that the transaction was in fraud of creditors.

GOOD FAITH PURCHASE: *Creditors cannot take land and consideration.* Where land was conveyed by a debtor in fraud of creditors, the latter may subject the land to the payment of their

debts, provided the title has not been acquired by a *bona fide* purchaser; but they cannot take both the land and the consideration therefor.

*Subjecting proceeds.* Where a debtor makes a valid sale of land, and his creditors can trace the proceeds, thereof they may subject the same to the payment of their debts.

PARTICIPATION BY GRANTEE. Where a debtor conveys his property for a consideration, in order to set the transfer aside as in fraud of creditors, it must appear that the grantee had knowledge of the debtor's fraudulent intent, or of such facts and circumstances as would put him on inquiry.

Lien on Property: CREATED BY SERVICE OF NOTICE AND PETITION: *Actual notice.* Under Code, section 4089, providing that a lien shall be created on the property of a judgment debtor in the hands of another, from the service of notice and copy of the petition to subject property to the payment of the judgment on the party holding such property, it is not necessary to serve notice of such proceedings against the judgment debtor, where the creditor had actual notice of the filing of the petition.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, Judge.

THURSDAY, OCTOBER 8, 1901.

SUIT in equity to quiet title. From the decree, plaintiff and interveners and cross-petitioners in the main action, and defendant Skinner in the case brought by Teachout, appeal.—*Reversed.*

*Lewis & Lewis* and *Shaw, Sims & Kuehule* for appellant Shumaker.

*Lewis & Lewis* for appellants Skinner and others.

*Quick & Carter, William Milchrist,* and *R. H. Brown* for appellants Sawyer, trustee, and others.

DEEMER, J.—There is a motion to dismiss the appeal because of defective service of notice. As to this it is sufficient to

say, without reciting the facts, that the motion is without merit, and it is therefore overruled.

The facts are complicated, and a somewhat lengthy statement is required. During the years 1895, 1896, and 1897 one Dwight H. Skinner became indebted to David Bradley & Co., H. E. Teachout, and the Fidelity Securities Company in sums now aggregating about $17,000. Prior to contracting these matters of indebtedness, and on or about the year 1890, Skinner became the owner of a large tract of land, consisting of more than 2,000 acres, situated in Woodbury county, Iowa, and known as the "Skinner Ranch." At that time the ranch was heavily incumbered. In October of the year 1896, Skinner, his wife, his father, his brother-in-law, and other relatives organized a corporation known as the Interstate Investment & Land Company, for the purpose of taking title to the ranch and other lands belonging to the incorporators. The ranch was transferred to the company for 467 shares of its stock, the par value of which was $50 per share. Mrs. Turner, Skinner's sister, transferred land of the value of $5,000, and Mrs. Skinner, the wife of D. H., transferred land to the value of $3,850, each receiving stock of the company therefor. W. D. Turner put in $1,200 in cash, and received stock at par for the amount of his investment. At the time the land was conveyed to the investment company, it was incumbered for more than $25,000. Wishing to borrow some money on the land owned by it, and finding that investors did not care to accept obligations of a corporation, the Interstate Company transferred the legal title of the ranch to W. D. Turner in trust, in order that he might execute the necessary notes and mortgages. After making the loan, the corporation concluded to sell the ranch, and finally consummated a bargain with plaintiff, whereby plaintiff agreed to pay the sum of $53,000 for the property, including the assumption of the $25,000 incumbrance thereon. Two thousand dollars was paid in cash, $17,000 paid Turner in March of the

year 1899, and $5,000 now remains in plaintiff's hands for reasons that will hereinafter appear. Shortly before the transfer to the Interstate Company, Teachout commenced action against Skinner on his claim. This action was dismissed, however, and thereafter recommenced in another county, where judgment was obtained. After sale. to the plaintiff. the various creditors we have named commenced actions to set aside the conveyances from Skinner to the investment company, from the investment company to Turner, and from Turner to plaintiff, because of alleged fraud in the transactions. - Plaintiff had actual, although not legal, notice of these suits before he paid the $17,000 of consideration hitherto mentioned, and he retained the $5,000 in order that he might protect himself against these claims and others. About the time of the filing of the creditors' bills, Skinner filed his voluntary petition in bankruptcy, and P. A. Sawyer, defendant, was appointed trustee in bankruptcy. The creditors to whom we have referred filed their claims with the referee, and they were each and all allowed, as was another small claim in favor of one Jandt. After the appointment of the trustee in bankruptcy, he (the trustee) was substituted as party plaintiff in the proceedings by creditors' bill. Before that suit was commenced, however, plaintiff commenced action to quiet his title, making the Skinners, the Turners, the Interstate Investment & Land Company, and all the creditors of Skinner of which he had any knowledge or notice, parties defendant. After Sawyer's appointment he intervened in this action, and pleaded the invalidity of the conveyance from Skinner to the investment company, from the investment company to Turner, and from Turner to plaintiff, claiming that they were each and all fraudulent and void as against creditors. But 619 shares of stock were issued by the Interstate Company. Of these Skinner received 467; his wife, 14; J. G. Turner, his sister, 136; E. W. Skinner, his father, 1; and W. D. Turner,

his brother-in-law, 1. After Skinner received his shares, he
assigned 200 to his mother-in-law, a Mrs. Bingham, 100
to his wife, and 100 to his sister, as security, it is claimed,
for money borrowed of the respective parties. Not long
afterwards Mrs. Bingham died, and as her share of the es-
tate, Skinner's wife received a note made by her husband to
her mother for $5,400, and an assignment of the 200 shares
of stock, which it is claimed were held as collateral security
for this note. The trial court quieted title in plaintiff, but
directed that he pay Sawyer, trustee, the sum of $3,200,
being the amount in his hands, unpaid, of the purchase
price of the lands, after deducting a judgment theretofore
obtained by the Farmers' Loan & Trust Company. It also
found that the transfer of the 200 shares of stock to Mrs.
Bingham was a fraud, and the assignment to Mrs. Skinner
covinous, and Mrs. Skinner was ordered to transfer and
deliver the same to Sawyer, trustee. Practically all parties
appeal.

That plaintiff is a good-faith purchaser for value is
conceded, but before he paid the purchase price in
full he received actual notice of the filing of Teach-
out's petition, wherein he claimed that the con-
veyances from Skinner to the land company and
from the land company to Turner were fraudulent
and void as to creditors of Skinner. He contends, however,
that, as he was not served with notice of these proceedings,
as required by law, he is not bound thereby, and that the
court was in error in requiring him to pay any sum to Saw-
yer. This contention is without merit. Such service was
necessary to the creation of a lien, but for no other purpose.
Code, section 4089. If, before paying the full purchase
price, plaintiff had notice that his grantor held a fraudulent
title, he would not be protected in his subsequent payment.
The main contention is over the transfer from Skinner to
the corporation known as the Interstate Investment & Land

Company. Turner took title simply as a naked trustee, without any consideration for the transfer; and his intervention will not purge the original transaction of any of its iniquities, if any there be. That a corporation known as above was duly organized under the laws of this state, and that it issued stock as stated, is beyond the pale of reasonable discussion; and the evidence not only shows that it took title to the lands in controversy, but other lands, and that some cash was also put into the venture. Even now it holds title to lands, and its stock is worth, according to the evidence, 50 cents on the dollar. True, its officers and stockholders were members of the Skinner family, but the evidence is uncontradicted that they furnished a *quid pro quo* for everything they received. The land was put in at its true valuation, and stock was issued directly to D. H. Skinner. None of his creditors except Teachout were crowding him, and he (Teachout) had dismissed his action, only to commence it again, it is true, in another county. After receiving the stock. Skinner used it for the purpose of paying or securing his creditors. True, these creditors were all, or nearly all, related to him by blood or marriage; but there is nothing to dispute the claim that he was indebted to them. We can easily imagine a case where a transfer to a corporation would be held fraudulent. If a debtor should organize such an artificial institution for the purpose of shielding himself from creditors, and should transfer his property to it, without other consideration than the stock of such corporation, no doubt the transaction would be fraudulent. And it is no doubt true that a corporation, as well as an individual, may be so connected with a fraudulent conveyance as that the transfer will be set aside, But it must in either case first be shown that there was a fraudulent intent on the part of the grantor in the disposition of his property. Without that there can be

no fraud, provided the conveyance was based on a consideration. Fraud on the part of the grantor is not alone sufficient, however. If the grantee be a purchaser, it must be shown that he had knowledge of the fraudulent intent of his grantor, or of such facts and circumstances as would put him on inquiry, which, if, followed would lead to the discovery of the fraud. If the corporation were a mere scheme for the purpose of concealing covin, equity would look behind the curtain to discover the real purpose. It is not denied that the other incorporators invested money in the scheme, and transferred property in consideration of stock received. This they would not have done had the transaction been as claimed by the creditors and their representatives. We are asked to say, however, that, notwithstanding there is no conflict in the evidence regarding the manner and method of organization, the whole scheme was a fraud, and that the witness should be disbelieved. This we are not prepared to do. When the facts disclosed are as consistent with honesty and good faith as with fraud and deceit, we must sustain the transaction. Finding that the sale to the investment company is untainted, and that Turner held title simply as trustee for that institution, it follows that plaintiff took good title, and that he should pay Turner according to the terms of his contract. He owes Skinner nothing, and his trustee in bankruptcy is not entitled to any part of the remaining purchase price.

Of the 467 shares of stock received by Skinner, he assigned 100 to his sister, Mrs. Turner, 200 to his wife's mother, Mrs. Bingham, 100 to his wife, and 65 to his mother. Each and all of these transfers are said to have been as security for money loaned to Skinner. The defendants and cross-petitioners insist, however, that they were fraudulent and void, and the trial court subjected the 200 shares originally assigned to Mrs. Bingham to the payment of D. H. Skinner's indebtedness. There is an apparent in-

consistency in the decree, in this: that it treats the Interstate Company as a paper concern, having no real existence except for the purpose of taking an apparent title to the land conveyed to it by Skinner, and yet subjects the stock issued in payment for the land to the claims of creditors. No actual fraud in the sale of the land to the investment company is found, as we understand it. Of course, if there was no sale, creditors may subject the land to the payment of their claims, provided the title has not not been acquired by a *bona fide* purchaser; but they cannot take both the land and the consideration therefor. If there was a valid sale, no doubt they may subject the proceeds to the payment of their claims. But if there was no valid sale, and they take the land itself, of course there are no proceeds to be taken. As we find, the sale to the Interstate Company was valid, our attention will now be given to the proceeds. There is no doubt that Mrs. Bingham, at the time of her death, held notes against D. H. Skinner, amounting to more than $5,400. These notes were secured by the assignment of the 200 shares of stock hitherto mentioned. When Mrs. Bingham died, these notes and the stock assigned as security were in her possession, and passed to her administrator. After her death, her heirs, who were all adults, agreed on a division of her property, whereby Mrs. Skinner, wife of D. H., received the notes just mentioned and an assignment of the 200 shares as security therefor. The assignment of the stock was made by the administrator. It is claimed that the original assignment of the stock to Mrs. Bingham was fraudulent and void as to the creditors of D. H. Skinner, and suggested in argument that Skinner was not in fact indebted to his mother-in-law in any sum. It may be these claims are true, but the trouble is there is no evidence to sustain them. We may suspicion that all was not honest and fair, but something more than this is necessary to sustain the decree.

There is direct evidence of loans by Mrs. Bingham to Skinner and an express assignment of the stock to her. That notes were given for these loans is conceded, and there is nothing but the relationship of the parties, and some prior questionable transactions relating to other matters by Skinner, to rebut the *bona fides* of the transaction. True, Mrs. Skinner was not a witness. But, as she knew nothing of the transactions between her husband and her mother, and as the manner of settlement of the mother's estate is not in dispute, her absence from the witness stand should not be considered important. The stock, as we have said, was assigned to Mrs. Skinner by the administrator; but, had there been no assignment, it would have followed the notes, for it was pledged as collateral security, and passed without a formal assignment. Jones, Pledges (2d Ed.) section 418. We cannot sustain the decree without absolutely rejecting the evidence in the case as it appears of record before us. Most of this evidence was offered by the trustee in bankruptcy, and yet he asks us not only to reject a good portion of it, but to bring to our aid such powers of imagination as we possess for the purpose of filling the gaps. That such procedure would not only be novel, but absolutely dangerous, few will deny. There is no evidence to discredit the other assignments of stock, except that they were made to members of D. H. Skinner's family. There is no such showing as would justify us in setting these aside. The close point in the case is the validity of the transfer to the Interstate Investment & Land Company. If that were a mere paper concern, we might sustain the decree in so far as it relates to Shumaker. To so hold would be to fly in the face of the evidence, and to give undue effect to a few suspicious circumstances, chief of which is the relationship of the incorporators. No one disputes that the corporation was legally organized; that it took title to the lands in dispute as well as to other prop-

erty; that it issued stock, elected officers, and is now a going concern. When Skinner conveyed his ranch to this corporation, none of his creditors, unless it be Teachout, were crowding him; and he, Teachout, had dismissed a suit that he had brought in Woodbury county. There was no undue haste in the organization of the company, and no secrecy in the transaction. Skinner almost immediately surrendered the possession of the land to a representative of the corporation. True, he soon disposed of the stock received by him; but, as we have seen, it was assigned to creditors. That he did not secure all is not of itself of great moment, for he had the right to prefer some over others. A careful examination of the entire record leads to the unanimous conclusion that plaintiff should have a decree quieting title as prayed, that the cross-petition should be dismissed, and that Teachout's petition in his original case should be dismissed.—REVERSED.