The J. I. Kelley Company, a Corporation, *Appellant,* v. Pollock & Bernheimer, *et al., Appellees.*

1.  When the legal effect of a conveyance is to hinder or delay creditors, the intent will be  presumed regardless of the actual motives of the parties.

2.  When a new corporation is organized which takes a conveyance from an existing corporation of all its corporate property

460        SUPREME COURT OF FLORIDA,

Kelley Co. v. Pollock & Bernheimer, *et. al.*—Opinion of Court.

and the only consideration paid therefor was the issuance of shares of capital stock in such new corporation to the individual stockholders and directors of such old corporation and an agreement to assume certain mortgage indebtedness of such old corporation, a bill filed by creditors of such old corporation against the new corporation, containing such allegations, coupled with the further allegation that the value of the property of such old corporation so conveyed "amounted to considerably more than the mortgage indebtedness so assumed," which seeks to subject such property so conveyed to sale for the payment of the judgment indebtedness of such old corporation, is not demurrable for lack of equity.

3.  Where a final decree has been rendered in a cause, the correctness of which is questioned by an assignment of error on the ground that it is not supported by the evidence, an appellate court will refuse to disturb it simply because the evidence is conflicting.

This case was decided by the Court En Banc.

Appeal from the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the court.

*W. W. Flournoy,* for Appellant;

*Daniel Campbell & Son,* for Appellees.

SHACKLEFORD, J.—This is a suit in chancery instituted by the appellees against the appellant, which resulted in a final decree in favor of the appellees from which the appellant has entered its appeal to the present term of this court. Very briefly stated, the appellees in their amended bill allege that each one of the complainants is a judgment creditor of the Jernigan Lumber Company, a corporation, the respective amounts and dates of

such judgments being set forth, that executions had is-
sued thereon and been returned *nulla bona,* and that such
judgments still remain unsatisfied; that on the        day
of July, 1905, the Jernigan Lumber Company, being the
debtor of complainants, proceeded by certain written con-
veyances to transfer and convey to the appellant, which
purported to be a corporation but which had no corpor-
ate existence at that time, all of the property owned by
such Jernigan Lumber Company, a detailed description
of which is set forth; that the complainants are advised
and believe and so charge that the appellant was not in-
corporated until the 12th day of August, 1905, on which
day letters patent issued to it; that the majority of the
shares of stock in such appellant corporation was sub-
scribed for by individual stockholders and directors of
the Jernigan Lumber Company, who are named, such
shares having been paid for by the conveyance of prop-
erty of such corporation to the appellant; that the only
consideration paid by the appellant for the transfer and
conveyance to it of all of the property of the Jernigan
Lumber Company was the issuance of shares of stock in
such appellant corporation to the individual stockholders
and directors of the Jernigan Lumber Company; that at
the time of the conveyance to the appellant of the prop-
erty of the Jernigan Lumber Company it was the under-
standing that the appellant would pay certain mortgage
indebtedness of such Jernigan Lumber Company but that
no provision was made for the payment of the indebted-
ness due to the complainants, although the complainants
are advised and believe and so charge that it was the un-
derstanding of the remaining stockholders of the Jerni-
gan Lumber Company, "and not only was it the under-
standing, but that it was the agreement that all the in-
debtedness of the Jernigan Lumber Company, including
the indebtedness of your complainants, would be paid by"

the appellant; that the indebtedness due to each of the complainants was then in existence and some of the complainants had reduced their claims to judgment; that the value of the property owned by the Jernigan Lumber Company and so conveyed by it to the appellant amounted to considerably more than the mortgaged indebtedness assumed by the appellant; that the appellant "was not an innocent purchaser without notice of the indebtedness of the said Jernigan Lumber Company and of the fact that the Jernigan Lumber Company after making this conveyance was insolvent and had no means with which to pay its indebtedness, because the said J. I. Kelley Company is composed of the stockholders and directors of the said Jernigan Lumber Company, and that it, the said J. I. Kelley Company, is holding this, as your complainants are advised and believe and therefore aver, in trust for the payment of your complainants' indebtedness under the law, they having received this land and personal property with these obligations resting upon it, and not only so, but as your complainants are advised and believe and therefore aver, it being the express understanding and agreement at the time of the conveyance that all the indebtedness of the Jernigan Lumber Company should be paid by the said The J. I. Kelley Company."

The prayers of the bill are that the property so conveyed by the Jernigan Lumber Company to the appellant may be decreed to be liable for the payment of the several judgments of the complainants and that the same, or so much thereof as may be necessary, may be sold under the direction of the court for such purpose, and for general relief.

To this amended bill the appellant interposed a demurrer, thereby questioning the equity of the bill, which demurrer was overruled by the court and upon this ruling is based the first assignment. This demurrer contains

seven grounds, but we see no useful purpose to be accomplished by setting them out or discussing them in detail. The appellant cites 1 Moore on Fraudulent Conveyances, 84, to the following effect: "In order that a conveyance, transfer, or transaction may be attacked as being fraudulent and void as against creditors, prejudice to the rights of creditors must result therefrom, even where there is actual fraudulent intent. A mere intent to defraud not resulting in injury will not render a conveyance fraudulent; there must be something done in pursuance of the intention which operates prejudicially on the rights of creditors." We do not question this statement as embodying a sound legal principle, but we fail to see its applicability to the instant case. It is doubtless further true, as the same writer proceeds to say: "The transfer by a debtor of exempt property or property of little or no value, not being prejudicial to the rights of creditors, cannot be set aside as fraudulent and the property subjected by creditors." Neither have we any fault to find with the following excerpt from Dunham v. Cox, 10 N. J. Eq. 437, text 467, S. C. 64 Amer. Dec. 460, text 462, also cited by the appellant: "It is not enough for the bill to show that the debtor has made a fraudulent disposition of any particular portion of his property to entitle the creditor to the aid of a court of equity. He must show that such disposition embarrasses him in obtaining satisfaction of his debt; for if the debtor has other property subject to the judgment and execution sufficient to satisfy the debt, there is no necessity for the creditor to resort to equity." We fail to see, however, wherein this principle can avail the appellant. It is clearly and positively alleged in the bill that the Jernigan Lumber Company had conveyed all of its property to the appellant so that nothing was left out of which the judgments of the appellees could be satisfied; that a majority

of the shares of stock in the appellant corporation was subscribed for by individual stockholders and directors of the Jernigan Lumber Company and therefore the appellant was not an innocent purchaser for value; that no consideration was paid for the property of the Jernigan Lumber Company so conveyed to the appellant save the issuance of shares of stock in the appellant corporation to individual stockholders and directors of the Jernigan Lumber Company and an agreement by the appellant to pay certain mortgage indebtedness of such Jernigan Lumber Company; that the value of the property so conveyed "amounted to considerably more than the secured indebtedness, i. e., the mortgages, the payment of which was provided for in the conveyance." It is also further alleged in the bill that it was the express understanding and agreement at the time of the conveyance that all the indebtedness of the Jernigan Lumber Company, including the indebtedness of the appellees would be paid by the appellant. Even if the contention of the appellant be conceded that the allegations of the bill concerning the agreement by the appellant for the payment of the indebtedness of the appellees are so vaguely, ambiguously and uncertainly stated as not to sufficiently charge the appellant, we do not see that the situation is materially changed or that the bill is rendered demurrable thereby. As was held in Logan v. Logan, 22 Fla. 561, S. C. 1 Amer. St. Rep. 212, "when the legal effect of a conveyance is to hinder or delay creditors, the intent will be presumed regardless of the actual motives of the parties." Also see the reasoning and the authorities cited therein. As was also held by this court in Bloxham, Comptroller, v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902: "When a new corporation is created by the consolidation of two or more corporations, and no provision is made by statute or by the articles of incorporation for the

payment of the debts and liabilities  of the constituent
corporations, the new corporation assumes all the debts
and liabilities of the constituent companies, which fol-
low as an incident of the consolidation; and under such
circumstances such consolidated corporation is not an in-
nocent purchaser for value of the property of its constit-
uent companies, so as to prevent the State from subject-
ing the same to payment of taxes thereon." While the
point at issue in this cited case was the enforcement of
the State's lien for taxes, but the reasoning in the opin-
ion and the authorities cited in support thereof will be
found to be very much in point in the instant case. See
especially the excerpts from the opinions in Hancock v.
Holbrook, 40 La. Ann. 53, 3 South. Rep. 351, and Hi-
bernia Insurance Co. v. St. Louis & New Orleans Trans-
portation Co., 13 Fed. Rep. 516, 4 McCrary, 432. Also
see Atlantic Coast Line R. R. Co. v. Cone, 53 Fla. 1017,
43 South. Rep. 514. We would also refer to 10 Cyc.
286, 287, 288, 308, 1266 *et seq.* and authorities cited
in notes, and Jones on Insolvent Corporations, sections
194 and 195. Also see Curran v. State of Arkansas, 15
How. (U. S.) 304. The contention of the appellant that
the bill is demurrable for the reason that it fails to allege
that the reasonable value of the property conveyed by .he
Jernigan Lumber Company was greater than the amount
paid therefor by the appellant cannot be sustained. We
are of the opinion that the allegation in the bill that the
valuation of such property was considerably more than
the mortgage indebtedness of the Jernigan Lumber Com-
pany assumed by the appellant, taken in connection with
the other allegations, is sufficient to shield the bill from
the attack made upon it by the demurrer.

Upon the overruling of the demurrer, the appellant
filed an answer to the bill, to which the appellees filed a
replication and an order was made referring the cause to

a master to take the testimony therein. Upon the coming in of his report, which embraced a considerable amount of evidence, both oral and documentary, the cause came on for a final hearing and a final decree was rendered therein in favor of the complainants, in accordance with the prayers of their bill. Such decree was rendered on the 13th day of October, 1908, and on the 30th day of November, 1908, the court made an order amending such decree. The other assignments of error question the sufficiency of the evidence to support the decree. We shall not undertake to give a synopsis of the evidence. These assignments are but lightly urged before us, the main argument of the appellant being directed to the first assignment based upon the overruling of the demurrer, with which we have already dealt. We have given the evidence our careful consideration and are of the opinion that it amply warranted the decree made. Finding no error in the record it follows that the decree must be affirmed.

All concur except PARKHILL, J., who took no part because of illness.