### In re BRAUS.

### Ex parte VAN BEUREN et al.

#### (District Court, S. D. New York. November 8, 1916.)

BANKRUPTCY ☞407(3)—DISCHARGE—FRAUDULENT TRANSFER.

> An insolvent debtor, who owned a number of stores, organized a corporation, of which he held all the stock, except a few qualifying shares, held by his wife and another, and to such corporation he transferred the more profitable stores; it being his intention to break the leases on two of the unprofitable stores. After appointment of his trustee in bankruptcy, he delivered the stock in the corporation to such trustee. *Held*, that the conveyance of his property to the corporation was fraudulent as to the bankrupt's creditors, and was a bar to a discharge, for the creditors would be hindered and delayed, as they would not only have to obtain possession of the stock, but then of the chattels represented by the stock; such conclusion being supported by the fact that the bankrupt intended by the conveyance to the corporation to defeat the rights of his landlord.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 740, 742–749; Dec. Dig. ☞407(3).]

In Bankruptcy. In the matter of the bankruptcy of Arthur S. Braus. On objection by Frederick T. Van Beuren and others to

bankrupt's petition for discharge. Petition dismissed, order affirmed, and discharge denied.

This cause comes up upon a petition for discharge. Certain creditors have objected, on the ground of a fraudulent transfer under the following circumstances: The bankrupt was engaged in the cloak and suit business for about 15 years, having 20 stores scattered about, of which 7 were in the city of New York. Three of these stores, in Fourteenth street, Manhattan, were unprofitable, and in January, 1915, the bankrupt, who had been losing money through the year 1914, organized a corporation, of which he held all the stock, but a few qualifying shares for his wife and one Samuel Klotsky. To this corporation he conveyed 5 of the stores in question, being those which he considered the most profitable. His explanation of this transaction was that he hoped to get in some friends as partners who would furnish money to rehabilitate the business, so that he could pay his creditors. The incorporation he insisted was to protect his creditors; the protection he had in mind being to break the leases on the 2 unprofitable stores in New York, and so get rid of them. After his trustee was appointed, he turned over his stock in the corporation to the trustee, and it does not appear that he did this under compulsion.

Mitchell & Mitchell, of New York City, for objecting creditors.
Alex B. Greenberg, of New York City, for bankrupt.

LEARNED HAND, District Judge (after stating the facts as above). It is not a clear question on authority whether it is a fraudulent transfer against creditors for an insolvent to convey all his property to a corporation in exchange for all or nearly all its stock. In the following cases such was the situation, and the sale was held bad: Mulford v. Doremus, 60 N. J. Eq. 80, 45 Atl. 688; Kelley Co. v. Pollock & Bernheimer, 57 Fla. 459, 49 South. 934, 131 Am. St. Rep. 1101; Bank v. Trebein, 59 Ohio St. 316, 52 N. E. 834; Benton v. Minn. Tailoring, etc., Co., 73 Minn. 498, 76 N. W. 265; Kellogg v. Douglas County Bank, 58 Kan. 43, 48 Pac. 587, 62 Am. St. Rep. 596; Bourgeois v. Risley Real Est. Co., 82 N. J. Eq. 211, 88 Atl. 199; Bennett v. Minott, 28 Or. 339, 39 Pac. 997, 44 Pac. 288; Roberts v. Hughes, 86 Vt. 76, 88, 83 Atl. 807. Bourgeois v. Risley Real Est. Co., supra, Bennett v. Minott, supra, and Roberts v. Hughes, supra, are, it is true, of slight importance, because in each the insolvent transferred the stock to his wife which he received on the sale apparently without consideration; but the language of the opinion seems to indicate that the sale alone would have been regarded as fraudulent.

Booth v. Bunce, 33 N. Y. 139, 88 Am. Dec. 372, is authority for the rule that it may be such, regardless of the fact that the stock is liable to execution after the transfer has been made. I hesitate, however, to cite that case as authority for the rule that the sale was void per se, because the court rested upon a verdict of the jury. However, the jury had nothing on which to go but the sale for stock, and it necessarily followed that such a sale alone must delay creditors, if the case was correctly decided. This seems to me a question of law, however the case was left to the jury. In Kellogg v. Douglas County Bank, supra, Bank v. Trebein, supra, and Benton v. Minn. Tailoring, etc., Co., supra, the insolvent had pledged the stock by way of preference; but the court does not seem to have rested upon that. In-

deed, as was said in Coaldale Coal Co. v. State Bank, 142 Pa. 288, 21 Atl. 811, and Scripps v. Crawford, 123 Mich. 173, 81 N. W. 1098, if the insolvent might prefer his creditors with his property, why may he not do so with the stock, which was the consideration for the property? I cannot see that this element really affects the case, and these cases, as well as Mulford v. Doremus, supra, and Kelley v. Pollock & Bernheimer, supra, seem to support the rule that such a sale is void.

There are, however, cases which hold that a sale by an insolvent to a corporation for its stock is not in fraud of creditors, because the right to levy on the stock is an equivalent of the right to levy on the chattels. Coaldale Coal Co. v. State Bank, 142 Pa. 288, 21 Atl. 811; Densmore Commission Co. v. Shong, 98 Wis. 380, 74 N. W. 114; Scripps v. Crawford, supra; Plaut v. Billings-Drew Co., 127 Mich. 11, 86 N. W. 399; Shumaker v. Davidson, 116 Iowa, 569, 87 N. W. 441; Kingman & Co. v. Mowry, 182 Ill. 256, 55 N. E. 330, 74 Am. St. Rep. 169. The last of these was an obviously honest effort to realize on the assets for the benefit of creditors, and the court based its decision upon that fact. I do not, therefore, regard the case as an authority to the contrary of the cases first cited, especially as the distinction is there pointed out that such sales, though not necessarily fraudulent, become such, when the purpose is to put the property out of the reach of creditors, even momentarily. Some indication appears, also, in the opinion in Shumaker v. Davidson, supra, that such a sale may become fraudulent if designed to obstruct creditors. The decision turned upon the fact that the sellers, a firm in each case, were not shown to be insolvent; and so does Densmore Commission Co. v. Shong, supra. If by that is meant that the sale was not shown to include all the seller's assets, and to leave him with only the stock, there is a valid distinction. Yet if the seller was not solvent independently of the stock received in exchange, the latter must be deemed the equivalent of the chattels for the purposes of execution, or the cases cannot stand. Such was the holding, at least, in Coaldale Coal Co. v. State Bank, supra. Perhaps it is fair to assume that the sellers were independently solvent, and, if so, the only jurisdiction holding the sale void as such is Michigan in the two cases cited.

I cannot agree on principle that the stock is the equivalent of the chattels for the purposes of the creditors; that depends upon whether on execution sale the stock will realize as much as the chattels, which every one who has any experience knows it generally will not. A judgment creditor must therefore in practice buy in the stock at the sale, and then try to get possession of the chattels and sell them. He may or may not succeed in this without substantial delay or hindrance. That will depend upon how surely he can disregard the corporate form, which in turn depends in part upon whether he is the only shareholder, and whether there have been debts contracted by the corporation. Even then he must have another sale. I do not believe that the law should tolerate any such embarrassments to creditors, when they result from mere contrivances to effect just what they do effect, and are not the incidents of a genuine effort to conduct the insolvent's affairs in his own interest.

In re Julius Brothers, 217 Fed. 3, 133 C. C. A. 328, L. R. A. 1915C, 89, gives no color for any such ruling. In that case the consideration, which was adequate in amount, consisted of cash, and was to be at once distributed among all creditors unconditionally. At least that was the theory adopted by the Circuit Court of Appeals, whatever may have been the facts. 209 Fed. 371.

In view of the foregoing, the sale in the case at bar must be held to be fraudulent. It certainly was not in the course of the general business of the bankrupt. It was only designed, as he admits, to change the rights of his creditors, and, indeed, it was to prevent his landlords from collecting their debts at all. I do not think that this intent was so abortive, by virtue of their right to levy on the, stock, as to make it an irrelevant futility.

It is therefore unnecessary to determine the very vexed question whether an assignment for the benefit of creditors should be a bar to discharge. That it is a conveyance which may be set aside within four months under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. 1913, § 9651), is certainly true. In re Gutwillig, 92 Fed. 337, 34 C. C. A. 377; In re Beisenthal, Fed. Cas. No. 1,236, 14 Blatchf. 146. · Yet after the period of four—or, under the act of 1867 (Act March 2, 1867, c. 176, § 35, 14 Stat. 534), six—months has expired, it is valid. Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377. It may be urged that the same conveyance cannot be fraudulent for four months, and not fraudulent thereafter; but that is the effect of these decisions. It is no more inconsistent to say that the same conveyance may not be fraudulent, under section 14b and yet be such under 67e. The decision of this question is not necessary for disposing of this case, because from any aspect this conveyance delayed creditors.

Petition dismissed; order affirmed; discharge denied.