Q. A. KELLOGG v. THE DOUGLAS COUNTY BANK *et al.*
No. 9494.

Q. A. KELLOGG v. LATHAM, ALEXANDER & CO. *et al.*
No. 9495.

Q. A. KELLOGG v. THE CHEMICAL NATIONAL BANK OF ST. LOUIS *et al.*
No. 9496.

1. APPELLATE PROCEDURE — *leave given to amend, record silent whether amendment made, petition presumed amended to support findings of the court.* Where the averments of a petition are insufficient to support the findings of the court, but it appears that leave to amend was granted, and the record is silent as to whether the amendment was made, and does not expressly show that it contains all the pleadings, and the case appears to have been tried as though the petition were sufficient, it will be presumed, in support of the judgment, that a sufficient amendment was made.

2. BANK — *may bind itself and pass title by negotiating notes before authorized by Bank Commissioner to do business.* A bank which has not received a certificate from the Bank Commissioner authorizing it to transact business, may negotiate promissory notes so as to bind itself, and pass a valid title thereto.

3. GUARANTY OF PAYMENT — *on back of negotiable note, with protest waiver, signed by payee, passes title as commercial indorsement.* An indorsement made on the back of promissory note in the following language: "For value received, we hereby guarantee payment of within note at maturity, waiving demand, protest, and notice of protest," signed by the payee of the note, is a commercial indorsement as well as a guarantee of payment; and, the note being negotiable in form, is sufficient to pass a valid title to the paper and protect an innocent purchaser thereof.

4. FRAUDULENT CONVEYANCE — *to corporation organized and controlled by debtor, corporation may be disregarded as independent entity.* A fraud may be perpetrated by an insolvent merchant through the instrumentality of a corporation organized and controlled by himself, to which he transfers the bulk of his property, as well as by a transfer to an individual; and where it appears that this has been done for the purpose of hindering and delaying creditors and enabling the debtor to retain the management and control of his property, and of depriving his creditors of an opportunity to collect their dues, and where such insolvent retains substantially all the stock in the corporation, and no inno-

cent person contributes any substantial sum to its assets, the court, in sustaining attachments levied on the property, and directing the sale thereof to satisfy the claims of creditors, is warranted in treating the whole transaction as a sham.

Error from Neosho District Court. Hon. L. Stillwell, Judge. Opinion filed April 10, 1897. *Affirmed.*

Three petitions in error, by Q. A. Kellogg, as plaintiff in error, are attached to one record. Each of these has been given a separate number by the clerk. The defendants in error first named in the petitions, and who are the only parties appearing in this court, are the Douglas County Bank, in number 9494; Latham, Alexander & Co., in number 9495, and the Chemical National Bank, of St. Louis, in number 9496. The Douglas County Bank brought suit on a promissory note, executed by Kellogg on the twentieth of November, 1891, for the sum of $4,100, payable to the order of M. D. Ewing, cashier, and caused an attachment to be issued, and to be levied on property claimed by Kellogg to belong to the Kellogg Mercantile Company. Latham, Alexander & Co. brought suit on a note, executed by Kellogg on the twenty-fourth of October, 1891, for $3,700, payable to the order of M. D. Ewing, cashier, which was indorsed, "C. T. Ewing, Pres.," and delivered to the plaintiff. An attachment was issued in this action also, and was levied on a stock of merchandise and certain real estate as the property of the defendant. The Chemical National Bank brought suit on a note, executed by Q. A. Kellogg to M. D. Ewing, cashier, for $3,500, dated February 19, 1892, due four months after date, and indorsed as follows: "For value received we hereby guarantee payment of within note at maturity, waiving demand, protest, and notice of protest. M. D. Ewing, Cashier." The last-mentioned suit

was brought May 24, 1892, before the maturity of the note. On application to the district judge, an order of attachment was allowed and issued, which was levied on real and personal property. A motion was made by Kellogg to discharge the attachment in each of the three cases, each of which motions was supported by his affidavit denying the grounds set cut in plaintiff's affidavits. In each of the two last-named actions, motions to dissolve the attachment and release the property attached were also filed by the Kellogg Mercantile Company. The motions to discharge the attachments in these cases were heard and considered together, and overruled June 20, 1892. The action of the Douglas County Bank was not brought until the twenty-first of June, 1892. The Kellogg Mercantile Company, claiming to own all the attached property, filed an interplea in each of the three cases. Interpleas were also filed by numerous other creditors, claiming a lien on the attached property under a chattel mortgage, executed by the Kellogg Mercantile Company, to secure their claims. By consent of all the parties interested, the court ordered that the three actions and all the interpleas filed in each case should be tried together; and this was accordingly done at the April term, 1893, resulting in judgments in favor of each of the plaintiffs against the defendant and all the interpleaders.

It was shown at the trial that C. T. Ewing carried on a banking business at Thayer, under the name of Ewing's Bank, M. D. Ewing acting as cashier. Q. A. Kellogg was a merchant doing business in the same town. For a number of years, Kellogg had executed promissory notes, as an accommodation to Ewing, which he had discounted. The three promissory notes sued on were executed in this manner, without consideration, for Ewing's accommodation, he agreeing to

protect Kellogg from liability on them.  These notes
were negotiated by Ewing to the respective plaintiffs.
Ewing was, and for a long time had been, insolvent.
In the course of their dealings, Kellogg had in like
manner executed accommodation notes aggregating in
amount over $400,000, and a large amount of notes of
this kind was outstanding at the time Ewing's Bank
was closed.  Being pressed for payment or security,
by the National Bank of Kansas City, which held his
note for $6,500, Kellogg, in the latter part of January,
1892, organized a corporation called the Kellogg Mer-
cantile Company, fixing the capital stock at fifteen
thousand dollars.  Of this stock he took one hundred
shares of one hundred dollars, par value, and the bal-
ance was distributed, as follows : To M. E. Kellogg,
his wife, twenty shares ; to E. W. Smith, twenty
shares ; to C. W. Smith, five shares ; to John Diller,
five shares.  The stockholders, other than Kellogg,
executed their promissory notes to him for an amount
equal to the face of the stock taken ; but E. W. Smith
soon surrendered nineteen of his shares to Kellogg, and
took up his note.  On the tenth of February, 1892, Kel-
logg was elected president and treasurer, his wife, M.
E. Kellogg, vice president, his nephew, C. W. Smith,
secretary ; and on the same day he conveyed to
the corporation his business house, valued at three
thousand dollars, his stock of merchandise, valued at
$8,346.69, and notes and accounts valued at $3,653.31.
The corporation assumed his outstanding indebted-
ness for merchandise, amounting to $1,499.47.   He
still retained a small amount of property which he
did not transfer to the corporation.  His total in-
debtedness at that time, including $15,350 of accom-
modation notes executed to Ewing, is found by the
court to have been $26,199.47, and his total assets
were $18,462.25.  The court found that, at the time

of the transfer, Kellogg was chargeable with notice of Ewing's insolvency; and that the incorporation of the Kellogg Mercantile Company, and the transfer of his property to it, were with the intent to hinder and delay his creditors. Judgments on the notes were entered in favor of each of the plaintiffs against Kellogg, and judgment was also rendered against all of the interpleaders. Kellogg, as plaintiff in error, brings this proceeding to reverse the judgments and orders of the court.

*J. W. Deford,* and *J. M. Dunsmore,* for plaintiff in error.

*Lapham & Brewster,* for the Douglas County Bank *et al.* and Lapham, Alexander & Co. *et al.;* and *J. D. McCleverty,* for the Chemical National Bank *et al.*

ALLEN, J. The sufficiency of the record to present the errors complained of is challenged. If there are really three separate cases, it is difficult to see how all may be prosecuted on one record. *Parkhurst v. National Bank,* 55 Kan. 100. As all of the cases were tried together in the District Court, and all the parties laid claim to the attached property, and as all of the parties necessary to a consideration of the questions involved are made defendants in error in one or another of the petitions in error which are attached to the single case-made, we are inclined to treat the case here as a single one, and the three petitions in error as really one in substance. This practice, however irregular it may be, does not appear to prejudice the rights of any of the parties.

I. A copy of the note attached to the petition of the Douglas County Bank fails to show any indorsement by Ewing to the plaintiff. It is urged that the note

was entirely without consideration as between Kellogg and Ewing, and that there was neither allegation nor proof of such a negotiation as would cut off Kellogg's defense of want of consideration.  In answer to this, it is said that leave was taken by the plaintiff to amend the petition, and that, in support of the finding and judgment of the court, it must be inferred that an amendment was made showing that the note was properly indorsed.  In the second paragraph of the facts as found by the trial court, we find the following : " Said note was duly indorsed to the plaintiff herein, and said plaintiff became the owner and holder of said note before the maturity thereof, in good faith, for value, and in the regular course of trade and business, without notice of any defense that Kellogg might have to said note as against C. T. Ewing."  On the trial, Mr. Sparr, the president of the Bank, testified, without objection, that the indebtedness to his bank on the note sued on was forty-one hundred dollars and accrued interest ; that the Bank purchased it from Ewing's Bank as a rediscount, and was the owner and holder thereof.  The cross-examination was solely as to whether there should be a credit on the note.  We find no statement in the case-made to the effect that it contains all the pleadings, nor is there anything from which we are required to infer that the petition was not amended so as to show a proper indorsement of the note.  There is nothing indicating that the attention of the court was ever called to the want of a proper indorsement, and it seems altogether improbable that the question now presented was ever really before the trial court.  All presumptions are in favor of the judgment.

1. Petition presumed amended to support findings of court.

II.  It was not necessary for the plaintiff to show that

Ewing's Bank had received a certificate from the Bank

**2. Bank may bind itself before authorized by Commissioner.** Commissioner, authorizing it to transact business, nor that the bank had transmitted the statement required by the Banking Law. It would be a strange construction of the act to hold that securities negotiated by a bank would be rendered void by the failure of the banker to comply with the law. It would be absurd to visit on innocent purchasers of its paper, penalties for a failure of the officers or proprietors of a bank to perform their duty. The law was intended to protect the public. The construction we are asked to place on it would aid in defrauding those who might deal with an unlawfully conducted bank.

III. The indorsement to the Chemical National Bank was sufficient. It was placed on the back of the

**3. Guaranty of payment on back passes title as negotiable.** note, and while it was a guaranty of payment, it was also an indorsement of the note. The guaranty itself would be senseless and wholly inoperative unless the note was transferred by the payee to a third party. Such indorsements are not at all uncommon. The cases of *Briggs v. Latham* (36 Kan. 205) and *Hatch v. Barrett* (34 id. 223) are not in point. One was a transfer of a mortgage, the other a mere assignment of a note without recourse. This was both a guaranty, and an indorsement which passed a full title to the note. 2 Daniel on Negotiable Instruments (4th ed.), 1781; *Robinson v. Lair*, 31 Iowa, 9 ; *Heard v. Dubuque County Bank*, 8 Neb. 10. And an indorsement as collateral security for a debt contracted at the time of the indorsement, protects the indorsee to the extent of the debt, the same as if the purchase were absolute. *Savings Association v. Hunt*, 17 Kan. 532.

IV. It is insisted that, in order to avoid the transfer of the property from Kellogg to the Kellogg Mer-

4—58 KAN.

cantile Company, actual fraud must be shown; that constructive fraud is insufficient, and that there is no showing in this case of actual fraud. It is contended that the organization of the Mercantile Company was suggested by the attorney for the National Bank of Kansas City, as a means of securing Kellogg's in-debtedness to it. It appears that Kellogg was asked, by the attorney for the Bank, to secure his note by chattel mortgage on his stock; that he refused to do so; and that the representatives of the Bank afterward suggested the organization of a corporation, and the transfer of a part of the stock as security for Kellogg's note to the Bank. After the corporation was organized, he did assign to the bank $10,000 of the stock in the Mercantile Company to secure a new note for $6,500, due in one year after date, with seven per cent. interest. The fact that the organization of the corporation was suggested by the representatives of the Kansas City bank, does not conclusively prove good faith on the part of Kellogg in acting on the suggestion. He refused to give a chattel mortgage, on the ground that it would result in closing his business. He adopted the other course, and organized a corporation in order to shield himself from the attacks of his creditors, and enable him to carry on his business and enjoy the income therefrom. The incorporation seems to have been little but a paper scheme devised in his own interest. His wife and clerks were mere instruments in his hands, contributing no real capital and obtaining no substantial interest in the property. Clearly, a fraud may be committed in the transfer of a debtor's property to such a corporation, as well as by a transfer to another individual for the purpose of placing it beyond the reach of creditors. In such case, the court was clearly warranted in

4. Fraudulent organization of corporation controlled by debtor disregarded.

closely scrutinizing the transaction and declaring its real purpose, notwithstanding the elaborate fabrications of charters, by-laws, and paper transfers. There is no force in the contention that it was not a fraud as to the Chemical Bank because the note sued on was not given until after the creation of the corporation. The note was merely a renewal of a prior obligation, and the debt existed before the fraudulent transfer was made. No error appearing in the record the judgments are affirmed.