### In re MANDEL.

(District Court, S. D. New York. November 2, 1903.)

1. BANKRUPTCY—SCHEDULES AS EVIDENCE OF INSOLVENCY.

The verified schedules of a bankrupt are competent evidence on the question of his insolvency, not only when the petition was filed, but also when a conveyance claimed to have been preferential was made, if within a reasonable time prior thereto.

2. SAME—PREFERENCES.

A bankrupt had from time to time assigned accounts receivable to a bank and borrowed money thereon to an amount less than their face under a prior agreement that any surplus collected on such accounts should be applied on any other indebtedness which might at the time be due the bank. Held, that such agreement related to the time when it became effective as to any particular accounts by their delivery thereunder, and that as to accounts assigned and delivered within four months prior to the bankruptcy, and when the debtor was insolvent, the application of the surplus therefrom by the bank to a prior indebtedness constituted the giving of a preference.

3. SAME—VOIDABLE PREFERENCE—NOTICE OF DEBTOR'S INTENTION.

Evidence considered, and held to show that at the time property was transferred to a creditor by an insolvent debtor, within four months prior to her bankruptcy, the creditor had reasonable cause to believe that a preference was intended, which rendered the preference voidable at suit of the trustee.

· In Bankruptcy. On report of special commissioner.

To the Hon. George C. Holt, United States District Judge:

I, Stanley W. Dexter, special commissioner to whom it was referred to take testimony of the ownership of the accounts claimed by the Jefferson Bank, of the city of New York, in and by virtue of an alleged assignment prior to the filing of the petition in bankruptcy herein, and as to the alleged assignment thereof, and the validity of said assignment, if any be found to have been made, to hear such witnesses as shall be offered by either side, and to report with all convenient speed to this court, with my opinion thereon, and the parties hereto having appeared before me on due notice, the trustee herein being represented by Lesser Bros., his attorneys, and the Jefferson Bank by Strasbourger, Weil, Eschwege & Schallek, its attorneys, and testimony taken thereon, which is returned herewith, and due deliberation having been had, and after considering the briefs submitted by both parties, do find and report as follows:

The bankrupt was engaged in the flower and feather business, as successor to the business founded by her late husband. The entire management of the business, however, was in the hands of the bankrupt's brother, Abraham Rosenthal, under and by virtue of a full power of attorney, which is dated February 6, 1902. The business of the bankrupt was largely conducted by the aid of credit furnished by the Jefferson Bank. Transactions with this bank began in February, 1902, upon the opening of a business account, and the transfer to the bank of a number of accounts, upon which the bank advanced 70 per cent. of the face value. The first loan of this nature was of $1,530.08. A number of other loans were made from time to time upon the same collateral, the bank accepting the assignment and collecting the accounts. The equity in the accounts was carried to a separate account, known as "the equity or collateral" account, and the surplus credited each month to the bankrupt's business account. On the opening of the account with the Jefferson Bank an agreement was made between the bankrupt, acting by her said attorney, and the bank, whereby the bankrupt agreed that the bank should have a lien upon any surplus of the deposit account, and upon all property of the bankrupt left with the bank as security or otherwise, and upon all collateral to any loan or otherwise, which collateral should also be held for any other liability to the bank, whether then existing or thereafter contracted.

Prior to September, 1902, the bank had advanced to the bankrupt upon two certain promissory notes the sums of $700 and $600, respectively, which, at the time of the adjudication hereinafter referred to, remained unpaid. The account between the bank and the bankrupt was adjusted on or about August 2, 1902, as of the business transacted between them up to July 17, 1902, when the spring business closed. Since that date there has been no adjustment between the parties.

It appears by the evidence of Louis Kress, the bookkeeper of the bankrupt, and thoroughly familiar with the business, that the practice of assigning accounts to the Jefferson Bank began in February, 1902, and continued upon the usual basis of 70 per cent., down to the last transaction, which was September 26, 1902, the validity of which is now assailed.

In August and September the bankrupt's business was getting into difficulties. The $700 note, which was discounted June 27, 1902, by the bank, was not met at maturity, but renewed on August 26th for two months. In the month of September the witness testified, "We were tied up, and people were getting impatient as the notes were falling due; they had threatened suit;" and Rosenthal was already consulting counsel as to the condition of the business. On September 26, 1902, the bookkeeper, at the request of Rosenthal, prepared thirty-seven statements, showing thirty-seven different accounts, aggregating $2,657.43, which he delivered to Mr. Rosenthal for the purpose of taking them to the bank and obtaining the usual loan. These accounts were stated by the bookkeeper to be good and collectible, and the best that remained available. The witness stated that Rosenthal meant to secure the bank on the maturing notes as well, but the evidence is vague in this regard. The assignment in question was taken to the bank, and the sum of $1,000 only was advanced, instead of the usual 70 per cent., as had heretofore been granted. The vice president of the bank swears positively that he had no information as to the insolvent condition of the bankrupt at the time and made no inquiries. The

money in question was used by Rosenthal as follows: $300 was paid to his attorney for services not appearing in the evidence, $250 to G. Rosenthal & Sons for a protested check, $150 to S. I. Richman & Co. for another protested check, $150 for pay roll, and $150 to the bankrupt personally.

On October 15, 1902, 19 days after this transaction, the bankrupt filed her petition, and was adjudicated bankrupt, the attorney in the proceeding being the same attorney to whom the sum of $300 was paid as aforesaid. The schedules show that her liabilities amounted to $26,931, and nominal assets $6,673. Liabilities to the extent of $10,906 were secured, leaving unsecured liabilities of $16,025 and nominal assets of $6,673. In the nominal assets was a stock of goods valued at $4,000 which were actually sold by the receiver for $1,050. It is apparent that on that date the bankrupt was hopelessly insolvent.

Upon the foregoing state of facts the trustee petitioned this court for relief by injunction against the collection of the assigned accounts by the Jefferson Bank, and for the usual order of reference to determine the validity of the bank's claim, the attorney for the bank agreeing to refer the matter for the purpose of taking testimony, and an order was made on March 12, 1903, referring the matter to the referee in bankruptcy as special commissioner.

I have treated the present proceeding as in the nature of an action by the trustee to set aside the assignments in question under the provisions of section 60 (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), as an unlawful preference received by the Jefferson Bank, with reasonable cause to believe that it was so intended. Such being the case, it is necessary for the trustee to establish: First, the insolvency of the debtor; second, the obtaining by one creditor of a greater percentage of his debt than any other creditor in the same class; third, the giving of a preference within four months; fourth, reasonable cause on the part of the creditor to believe that a preference was intended. In re Eggert, 4 Am. Bankr. R. 449, 102 Fed. 735, 43 C. C. A. 1; Mathews v. Hardt, 9 Am. Bankr. R. 373, 80 N. Y. Supp. 462.

First. As to the insolvency of the debtor: I am satisfied from the evidence in this case that Fanny Mandel was insolvent on September 26, 1902, and for a considerable period prior thereto. The transaction in question occurred less than three weeks prior to the bankruptcy, and the schedules verified by her are competent evidence, not only of her insolvent condition at that time, but also on the question of insolvency within a reasonable time prior thereto. Bank of New York v. Southern National Bank, 170 N. Y. 1, 62 N. E. 677; Baily v. Hornthal, 154 N. Y. 648, 49 N. E. 56, 61 Am. St. Rep. 645. The testimony of Kress, the bookkeeper, is also cogent evidence to the same effect. The bankrupt was being pressed for money, two checks had gone to protest, and the creditors were threatening suit. The deficiency of nearly $10,000 between the unsecured liabilities and the nominal assets has not been explained, and leaves no room for doubt that on September 26, 1902, the bankrupt was entirely insolvent, and I so find and report.

Second. That the Jefferson Bank, by retaining the surplus accounts, has obtained a greater percentage of its debt than any other creditor in the same class is also apparent. The vice president of the bank testified that the bank, acting upon the agreement of February 6, 1902, applied $600 from the surplus of equity account to the payment of the note of that amount then maturing, and proposed to apply any further equity payments on the remaining indebtedness.

Third. Under the ruling in the case of Mathews v. Hardt, 9 Am. Bankr. R. 373, 79 App. Div. 570, 80 N. Y. Supp. 462, which was decided by the Appellate Division of the Supreme Court, this department, in January, 1903, it was held, construing section 60 of the bankruptcy act, that an agreement by which a firm was to make an advance to a corporation, and should have a lien for the same upon the property of the corporation, is to be treated as of the date when possession was taken, and not when the agreement for the lien was given. The question to be determined in such cases is therefore: "Did the delivery of the possession to the defendants and their taking possession within four months of the bankruptcy constitute a preference within the meaning of the bankruptcy act?" As is well stated in the opinion in this case, "the trend of the decisions in the United States Supreme Court under the recent bankruptcy act upon the subject of the date of transfers is in support of the view that,

with respect to an instrument of transfer, it is the time when such instrument is recorded or when possession is taken or notice is otherwise brought home to the creditors of the bankrupt that is controlling." In Crooks v. Bank, 3 Am. Bankr. R. 242, 61 N. Y. Supp. 604, decided by the Appellate Division, the court says: "It is the result or effect of the act done which is declared against, not the manner or method by which it is done. No matter how circuitous the method may be, if the effect of a transfer of property, made within four months before the filing of a petition in bankruptcy, is to enable any of the bankrupt's creditors to obtain a greater percentage of his debt than others in the same class, then such transfer is voidable, if the person receiving it or to be benefited thereby had reasonable cause to believe that it was intended thereby to give a preference."

Under these authorities, I am constrained to report that the agreement of February 6, 1902, did not give the Jefferson Bank any power to retain the surplus of the accounts assigned to them, and apply them on the general indebtedness of the bankrupt, as against the claims of the other creditors in this proceeding. The nature of the transaction must be determined as of September 26, 1902, when the assignment was actually made and possession taken thereunder. This being within four months of the bankruptcy, and the bankrupt at the time insolvent, constitutes, in my opinion, a preference, within the meaning of section 60, subd. "b," so far as the attempted disposition of the surplus of the accounts is concerned.

I am satisfied that the bank made the advance of $1,000 at the time of the transfer, and as to that extent the assignment is valid. There is also no question in my mind as to the validity of any of the assignments other than that of September 26, 1902, as all of such were made in the regular course of business and for a present consideration. But the surplus under these assignments, as well as those involved in the transaction of September 26, 1902, is the sole question concerning which any serious controversy may arise.

Fourth. This brings us to the last element necessary to render the transaction voidable, to wit, did the Jefferson Bank have reasonable cause to believe that a preference was intended? It is strenuously urged that the circumstances attending the last advance were of so unusual a nature as to raise the natural presumption that the bank knew, or should have known, that a preference was intended. Mr. Radt, the vice president of the bank, who conducted the transaction on behalf of the Jefferson Bank, denied positively any information as to the failing condition of the business of the bankrupt, and testified that he made no inquiries as to the business or the purpose for which the money was intended. He had previously made advances on such assignments, and relied on his acquaintance and knowledge of Rosenthal. In answer to a question as to whether it was his custom to advance money on accounts without inquiring as to the financial condition of the depositor, he stated: "It is only the custom when the people commence to cash accounts; afterwards we take them right along as we go along." Mr. Radt does not explain very clearly why he did not advance the usual 70 per cent. on the accounts then presented to him, which, as stated, aggregated $2,657.43; but Mr. Rosenthal testifies that the reason was that the accounts in question were not rated, and therefore not as valuable as the previous ones. In this he is contradicted, to a certain extent, by Mr. Kress, who stated that the accounts were good and collectible; and he further stated that Rosenthal stated or implied that there had been more claims handed down than the amount he should have received to secure the bank for money loaned.

I am inclined to believe Kress' testimony rather than that of Rosenthal. Mr. Radt testified that he had known Rosenthal for years, and Rosenthal testifies that he never knew Radt before he went to the bank. It is quite likely that Radt made no inquiries, being satisfied to keep the accounts and apply the balance as collected under the agreement of February 6, 1902. If he had inquired, he certainly would have discovered the condition of the business. The fact that two checks had gone to protest must have been known to him, or might have been easily ascertained. The disposition of the money might also have enlightened him as to the condition of the business. He would have learned that cash was being paid to take up protested checks, and to pay a lawyer, presumably for advice in regard to bankruptcy proceedings, and that the

bankrupt was applying the rest to her own personal use. There is no question that at the time the loan of $1,000 was obtained the bankrupt was meditating these proceedings, and, in view of the close relations between the bank and Rosenthal, I cannot resist the presumption that the assignment of so large a number of accounts was part of a plan tacitly understood between them, by which the bank was to get the benefit of the surplus. The action of the bank in applying the surplus to the first note confirms this view. I think that the surrounding circumstances were such as would have led an ordinarily prudent business man to believe that a preference was intended, and I so find and report.

The total face value of the accounts assigned after the date of the previous statement appears by the testimony at pages 121 and 124 to be.................................................. $5,937 30

Of this there has been assigned on September 26, 1902, 37 accounts, of the aggregate face value of...................... 2,657 43

Leaving accounts assigned to the bank prior thereto of the face value of ................................................... $3,279 87 unaffected by this decision.

By the stipulation filed herein October 15, 1903, it appears that the receiver and trustee have collected thirty assigned accounts, aggregating ..................................... $2,981 38

Of which there belongs to the trustee in bankruptcy under this decision .............................. $592 70

But it also appears by the same stipulation that the bank has collected from the assigned accounts of September 26, 1902, and improperly retained............ 215 75   808 45

over and above the loan of $1,000, interest and commissions, and that assigned accounts of the face value of $631.76 remain uncollected.

I therefore find and report that, upon the assignment by the Jefferson Bank of the following accounts remaining uncollected, viz.:

Mrs. A. Malone .................................. $ 34 35

Mrs. L. F. Funk ............................... 139 30

A. Neger ...................................... 153 34

Mrs. G. Cullen ................................ 58 50

Mrs. A. R. Gerstel ............................ 170 12

Mrs. M. J. Rabits ............................. 76 25

    Total uncollected ............................. $631 76

—The trustee in bankruptcy should pay to the Jefferson Bank out of the balance in his hands the sum of................. $2,172 93

—The same being the proceeds of all amounts collected by said trustee and assigned to the Jefferson Bank, less the proceeds of accounts assigned on September 26, 1902, collected over and above the sum of $1,000, above set forth.

I further report that the commissioner's fees in this reference, amounting to $75, and the stenographer's fees, amounting to $38.05, should be paid as may be directed by the order of the district judge.

All of which is respectfully submitted.

Lesser Bros. (William Lesser, of counsel), for trustee.

Strasbourger, Weil, Eschwege & Schallek (Emanuel Eschwege, of counsel), for claimant.

HOLT, District Judge. Referee's report confirmed.