**HAMILTON RIDGE LUMBER SALES CORPORATION et al. v. WILSON et al.**

Circuit Court of Appeals, Fourth Circuit. April 10, 1928.

No. 2680.

1. Corporations ⬳1—Courts will look beyond corporate entity whenever justice requires, though acts involve constructive fraud only.

Where facts justify it, courts will look beyond the mere corporate entity to the persons who compose the corporation, and rule is not limited to cases where corporate entity has been resorted to for purely fraudulent and criminal purposes, but extends to acts amounting to constructive fraud only.

2. Bankruptcy ⬳172—Manufacturing corporation's transfer of lumber to sales corporation organized solely to secure debt to bank held not valid "sale" as against manufacturing company's bankruptcy trustee.

Where lumber manufacturing corporation in financial difficulties, organized a sales corporation for sole purpose of securing its debt to bank and transferred to it a large quantity of lumber in its yards at specified price, evidenced by five notes, which bank discounted and out of

proceeds paid existing indebtedness of manufacturing corporation, and thereafter representative of bank, who was elected treasurer of sales corporation, took formal possession of such lumber, but manufacturing corporation continued to sell lumber and to pay taxes and insurance thereon as formerly, sales corporation keeping no books nor transacting any other business, held that transaction was not a valid "sale" as against manufacturing corporation's trustee in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

3. Pledges ⬳11—Pledgee's complete possession of, and exclusion of pledgor's dominion over, pledged property are necessary to validate pledge.

Pledgee's possession of pledged property is necessary condition to validate a "pledge," and pledgor's dominion over such property must be completely excluded.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pledge.]

4. Bankruptcy ⬳188(8)—Manufacturing corporation's transfer of lumber to sales corporation organized solely to secure debt to bank held not valid "pledge" as against manufacturing corporation's bankruptcy trustee.

Where lumber manufacturing corporation in financial difficulties organized a sales corporation for sole purpose of securing its debt to bank and transferred to it a large quantity of lumber in its yards at specified price, evidenced by five notes, which bank discounted and out of proceeds paid existing indebtedness of manufacturing corporation, and thereafter representative of bank, who was elected treasurer of sales corporation, took formal possession of the lumber, but manufacturing corporation continued to sell lumber and to pay taxes and insurance thereon as formerly, new corporation keeping no books nor transacting any other business, held, that transaction was not valid "pledge" as against manufacturing corporation's bankruptcy trustee.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; D. Lawrence Groner, Judge.

In the matter of the bankruptcy of the Hamilton Ridge Lumber Corporation. From a decree of the District Court confirming the report of the referee in favor of John T. Wilson and others, trustees in bankruptcy, as to rights in a certain fund, the Hamilton Ridge Lumber Sales Corporation and another appeal. Affirmed.

See, also, 23 F.(2d) 398.

Lewis C. Williams, of Richmond, Va. (James Mullen, Ralph T. Catterall, and Williams & Mullen, all of Richmond, Va., on the brief); for appellants.

Henry C. Riely and Aubrey R. Bowles, Jr., both of Richmond, Va. (McGuire, Riely & Eggleston, of Richmond, Va., on the brief), for appellees.

Before WADDILL and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge. The Hamilton Ridge Lumber Corporation was a Virginia corporation operating a sawmill and lumber plant in South Carolina. It was adjudicated a bankrupt in the District Court of the United States for the Eastern District of Virginia, on June 1, 1923, and the appellees herein were appointed trustees in bankruptcy for the said corporation. For a number of years prior to bankruptcy, the bankrupt corporation had been a customer and a large borrower of the American National Bank of Richmond, Va., one of the appellants hereafter referred to in this opinion as the bank. In the fall of 1921, bankrupt's financial condition had become such that the bank demanded a readjustment of its account. At that time the bankrupt was heavily involved, being in arrears in the payment of interest upon its bonded indebtedness, and having large current liabilities. It then owed the bank $95,000.

It was finally agreed between the lumber company and the bank that a corporation should be organized, to be known as the Hamilton Ridge Lumber Sales Corporation, which new corporation would presumably purchase enough of the lumber on the yards of the bankrupt to pay the bank's indebtedness, $95,000, and an additional sum of $30,000 to be used by the bankrupt for current purposes; the new corporation to take over 5,000,000 feet of manufactured lumber at the price of $25 per thousand feet, and execute and deliver to the bankrupt five notes for $25,000 each, which the bank was to discount. Out of the proceeds of these notes the then existing indebtedness of the bank was to be paid.

The sales corporation was chartered under the laws of Virginia, on November 16, 1921, with an authorized minimum capital stock of $300, and a maximum of $50,000; the shares being of a par value of $100. Only three shares of this stock were issued, and these three shares were afterward transferred to the bankrupt and pledged as security for loans to the bank. The sales corporation was organized by officers of the bank and the bankrupt and their attorneys; J. R. Paschall, president of the bankrupt, being president of the sales corporation.

On December 16, 1921, the sale of the lumber by bankrupt was authorized by resolution of its board of directors, and ratified by the directors of the sales corporation, and

25 F.(2d)—38

on December 27, 1921, the sales corporation executed and delivered to the bankrupt the five notes for $25,000 each, which notes were in turn discounted by the bank, which applied $95,000 of the proceeds of the discount to the extinguishment of bankrupt's indebtedness to it. On or about January 1, 1922, one H. T. Parrish, being selected by the bank, and having been elected treasurer of the sales corporation, went to the plant of the bankrupt at Estill, S. C., and purported to take charge of 5,398,600 feet of manufactured lumber; said lumber then being on the lumber yard of the bankrupt. No measurement was made of the lumber, and the amount was estimated from the books of the bankrupt. The lumber was not graded, and a fixed price of $25 per thousand feet was made for all grades.

It was understood that a lease of the yards, upon which the lumber was stored, was to be made to the sales corporation, but no such lease was ever executed. On his arrival at bankrupt's plant, Parrish had a plat made of the yards upon which the lumber was stored, and caused to be posted around and in said yards nine signs, bearing the words, "Property of Hamilton Ridge Sales Corporation." These signs were not attached to the piles of lumber, and in some instances were as much as twenty-five steps distant from the lumber. The word "Lumber" in the corporate name of the sales corporation was not used on the signs, nor did the signs indicate as to what they had reference, whether the ground, or the lumber, or both.

No rent or compensation of any character was paid the bankrupt by the sales corporation for the use and occupation of the yards upon which lumber was stored, and the bankrupt paid the taxes and insurance on the lumber as it had been doing formerly. Parrish, in addition to active service in his capacity as custodian of the lumber, performed various duties for the bankrupt in the operation of its plant, and his salary was paid by the bankrupt. He continued in his capacity as custodian until the date of bankruptcy.

The bankrupt continued to ship lumber from the yards in the due course of its business as it had done formerly, without in any way consulting or advising with Parrish, or in any way recognizing his authority over the lumber, although at various times, when the stock of lumber on the yards got low, Parrish would call this fact to the attention of the officers of the bankrupt, and insist on the quantity being increased. Once or twice

Paschall, president of both bankrupt and sales corporation, deliberately flouted the authority of Parrish as custodian of the lumber. This resulted in protests from the bank. Customers testified that they went to the bankrupt's plant, purchased lumber, and had it shipped without even knowing of any authority that Parrish had over the lumber.

Though it was organized for the purpose of purchasing the lumber in question, the sales corporation never transacted any business other than the single purchase above set out. It was not equipped or articulated to transact business, kept no books, attempted to make no resale of the lumber purchased, was not qualified to do business in the state of South Carolina, and was evidently organized solely for the purpose of carrying out the plan by which the manufactured lumber of the bankrupt on the yard at the time of the purported sale could be handled, so as to secure the bank for its debt and advances.

At the time of the bankruptcy, very little, if any, of the lumber on hand when Parrish took charge, was still on the yard; practically all of it having been shipped out and replaced by the bankrupt in due course of its regular business. The evidence of Parrish on this point was to the effect that not over 50,000 feet of the lumber originally taken possession of by him was on the yard when bankruptcy took place.

The indebtedness represented by the five notes for $25,000 each, appears to have been consolidated into one note for $125,000, and, at the time of the bankruptcy of the lumber company, had been reduced to $120,000.

Upon being appointed trustees of the bankrupt, appellees took possession of the lumber then on the yard, and, by agreement of all parties, it was sold free of all claims; the litigation being transferred from the lumber to the fund arising from its sale. It is the possession of this fund about which the present litigation arises.

The matter was referred to the referee in bankruptcy, who filed his report on March 31, 1926, finding the facts practically as above set out, finding the law in favor of the trustees, and holding that the fund should go to the general creditors of the bankrupt. The report of the referee is an unusually well-considered one, and was adopted by the learned trial judge below as his opinion. A decree confirming the referee's report was entered, from which decree this appeal was taken.

Two questions arise: (1) Did the transaction between the bankrupt and sales corporation constitute a sale? (2) If not a sale, did the transaction with such transfer of possession of the lumber in question constitute a valid pledge, as against the trustees of the bankrupt?

[1] The sales corporation was a dummy corporation, organized for the sole purpose of carrying out a plan by which the bank could be secured for its debt and advances, and, while the transaction could not be characterized as fraudulent, it was not bona fide to the extent that there was a real sale of the lumber in question. The Sales Corporation had no real business existence, had in fact no organization by which it could transact business, and in matters of this kind the courts will look through the apparent structure to the real thing behind it. As was said by the referee in his report:

"In other words, that, when the facts justify it, the courts will look beyond the mere corporate entity to the persons who compose the corporation.

"Although the doctrine that a corporation is a legal person in the law distinct from the members who compose it will always be recognized and given effect, both at law and in equity, in cases which are within its reason and when there is no controlling reason against it, and although in some cases it seems to have been given effect contrary to reason, it is clear that a corporation is in fact a collection of individuals who, in the case of modern private corporations, really own its property and carry on the corporate business, through the corporation and its officers and agents, for their own profit and benefit, and that the idea of the corporation as a legal entity or person apart from its members is a mere fiction of law introduced for convenience in conducting the business in this privileged way; and it is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both at law and in equity." 14 Corpus Juris, 59.

"The legal conception of a corporation distinct from its members has often been regarded as a mere fiction adopted by the law for the purpose of enabling natural persons to transact business in this peculiar way; whenever it is necessary to do so, the law will look behind the corporate body and recognize the members and disregard the fiction." Clark on Corporations (3d Ed.) p. 10.

"In reality a corporation or association of individuals, and the fiction will be disregarded, and this fact recognized by the courts, whenever the fiction is urged to an

intent and purpose which is not within its reason and policy." Marshall on Corporations, p. 16.

This principle has not been more clearly stated, perhaps, than by the Supreme Court of Ohio, in State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541, where it is said:

"On a question of this kind, the fact must constantly be kept in view, that the metaphysical entity has no thought or will of its own; that every act ascribed to it emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons, than a house can be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons associated as a corporation, and whether done in their capacity as corporators or as individuals, must be determined by the nature and tendency of the act."

See, also, Kellogg v. Douglas County Bank, 58 Kan. 43, 48 P. 587, 62 Am. St. Rep. 596; In re Muncie Pulp Co., 139 F. 546 (C. C. A. 2d Cir.).

Nor, can I agree with the contention of counsel for the bank that this doctrine is applicable only in cases where the corporate entity has been resorted to for purely fraudulent and criminal purposes. I do not find that the rule is subject to any such limitations, but, on the contrary, that it is applicable wherever reason and justice require its application, though the acts of the parties amount to constructive fraud only. 14 Corpus Juris, 59; Clark on Corporations (3d Ed.) p. 10; Marshall on Corporations, p. 16, supra. In support of his contention, that the rule is applicable only in cases where actual fraud is involved, counsel for the bank cites Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634, and Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 S. Ct. 728, 47 L. Ed. 1113, but I submit that an examination of these cases will show that, as far as the facts are concerned, neither of them is in point. [2] The fact that the bankrupt was allowed to continue shipping from the lumber supposed to have been sold, without recognizing in any way the authority of the sales corporation, is also of great significance, and we have no hesitation in reaching the conclusion that the transaction did not constitute a sale.

[3, 4] As to the second point, whether or not the transaction constituted a valid pledge as against the creditors of the bankrupt, an examination of a great number of authorities and decisions on this particular point which has arisen in the courts, in numerous cases, shows that the one inexorable condition necessary to validate a pledge of this character is complete possession on the part of the pledgee of the property pledged. The dominion of the pledgor over the pledged property must also be completely excluded. These two requisites are laid down in all of the cases consulted. Neither of these conditions exist in the present case. The possession of Parrish was formal only; his control over the lumber was purely perfunctory; he was not consulted when the lumber, supposed to be in his charge, was sold or shipped, nor were the proceeds of the sales turned over to him or his principal. The dominion of the bankrupt over the lumber was scarcely interfered with.

An early case on this question, in the Supreme Court of the United States, is that of Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, where will be found a full discussion of this subject, and where the court says:

"This possession ought to be certain and not equivocal. If it is ambiguous, if the things pledged have been so placed as to deceive the other creditors, and to lead them to believe that the debtor always continued the possessor, the pledge would be endangered."

And again, at page 490 of the opinion, we find the court using the following very forceful language:

"The Credit Mobilier claims a privilege by virtue of a pledge; and such a privilege, as we have seen, cannot be maintained as to third persons, without possession. Bad faith, it is true, would defeat the pledge though the creditor had possession. But want of possession is equally fatal, though the parties may have acted in good faith. Both are necessary to constitute a good pledge so as to raise a privilege against third persons. The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods."

See, also, Security Warehousing Co. v. Hand, 206 U. S. 415, 27 S. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Fourth St. Nat. Bank v. Millbourne Mills Co. (C. C. A.) 172 F. 177, 30 L. R. A. (N. S.) 552; In re Mandel (D. C.) 127 F. 863.

This court, in the case of In re Spanish-American Cork Products Co., 2 F.(2d) 203, has exhaustively considered this question, and

reviewed practically all of the authorities cited by attorneys in this case, and reached the conclusion above stated.

The case of Union Trust Co. v. Wilson, 198 U. S. 530, 25 S. Ct. 766, 49 L. Ed. 1154, relied upon by attorneys for appellant, is easily distinguished from the present case. In that case the possession of the pledgee was clear and plain, and the dominion and control of pledgor was completely excluded, which is not true in the instant case. Here not only was the possession of Parrish incomplete and a mere form, but the control and dominion of the bankrupt over the lumber on its yards was not materially interfered with.

We are of the opinion that the pledge is in no way effective as against the creditors of the bankrupt; that the findings, both of law and fact, by referee, were correct, and that the court was right in confirming them.

The decree of the court below is accordingly affirmed.